Leslie Bassett is here for the appellate. Rhode, Charles Rothfeld, is here for the appellee, CSX, and Ms. Bassett, you may begin when you're ready. Good morning. May it please the Court, I'm Leslie Bassett. I'm here representing Brian Rhodey, who's the appellant, the plaintiff in the underlying case. This is an ERISA case. We didn't clear the room. It's a straight benefits claim under 502A1B. And I think it's fairly simple once we get past some of the procedural issues that I'd like to raise first, if that's okay with the Court. The first is that CSX argues that Rhodey has waived certain arguments that he presented on appeal, simply because they were presented in a way that was slightly different than they were presented in the district court. We disagree. We think that our arguments neatly map to the objections in the underlying court. For instance, the first objection that Rhodey raised in the lower court was that the R&R that the magistrate submitted failed to address whether the administrator was erroneous on a question of law. And we have several arguments as to why that's actually true here, and that's why we've appealed the district court's decision. The first is that generally, ordinary contract principles apply when you're looking at the terms of a plan. And the term voluntary termination is unambiguous on its face, and so the plan administrator did not actually have the authority to interpret the terms of that plan, to interpret that term in a way that was contrary to its plain and ordinary meaning. Therefore, the district court erred in... CSX doesn't deny that there's a conflict, but they say that you haven't demonstrated that it caused her to abuse her discretion or act arbitrarily or capriciously, and that's our standard of review, right? Your Honor, I would respectfully disagree with that. I think there's several reasons that we argue in our briefs, and I'll argue here, that the One of those is what I just stated, which was that when we're looking at unambiguous plan terms in an ERISA plan, we apply ordinary contract principles to that to determine what the meaning of those terms are. And therefore, there's no deference to any interpretation that the plan administrator would give to that, because it's a straight legal question for the court to apply ordinary contract principles on. The second basis on which we say de novo review should apply is that in this case, Rhodey's claim was never given full and fair review. The plan administrator here looked at the information that he requested her to very reasonably and easily go look at, for instance, emails or interviewing his subordinates or whatever else, because the main issue here really is, did he resign or was he terminated involuntarily? So the plan administrator's failure to really do some reasonable actions that would shed some light on the answer to that question means that he was not afforded full and fair review, and because of that, we should get de novo review here, not arbitrary and capricious. So is your argument, your argument is that the administrator didn't look at enough things and that's why we go to de novo, or is it that there was a conflict and that's why we go to de novo? It's kind of both, because I think, and you're right to be confused about that, because the full and fair review issue neatly dovetails with the conflict issue. There was clearly a structural conflict for the reason that the plan administrator was making a decision and also the plan and the company itself were financially responsible for paying the benefits at issue, but there was more of a conflict here. There was an egregious conflict here, because the plan administrator here was actually involved in the decision as to whether the termination was a resignation or whether it was an involuntary termination. But don't you need to still show that it was, that the decision was arbitrary or unreasonable, even if there was a conflict? Even if there was a conflict under the arbitrary and capricious standard of review, yes, you're right. I'm arguing that because of that conflict and the failure of full and fair review here, we should get a de novo standard of review. What would de novo review look like here? Because this is basically an issue of fact, right? I mean, he says that he was fired. The company says he quit. What are we, there's no evidence for it. I mean, there's no, like, plan document for us to look at. What do you want to happen? Sure. And I think here it's, the issue is, was it a voluntary termination? And our argument is that if you look at the record here and all the evidence before the plan administrator and before the court, no reasonable person could say that he was, that he voluntary, voluntarily terminated his. Really? No reasonable person? I think so. What we've got here, the only evidence in the. Did he provide the required written notice within 10 days that he believed constituted good reason, 10 days of the events that he believed constituted good reason? You can decide the case just based on that basis alone. Okay. So, I respectfully disagree with that. That provision under the plan applies to a claim for benefits for term, for terminating, voluntary termination with good reason. He never argued to the plan administrator that he terminated his employment with good reason. Now he's dropped it, right? He argued it in the district court and dropped it. Yeah. As an alternative theory, yes. So, that's, I mean, just to go to Judge Grant's sort of skepticism. I mean, literally, the plaintiff, I guess he's the plaintiff, argued that he voluntarily would quit, but he just said it was with good reason, right? That was an alternative position that he took in the district court. Right. I mean, if you. So, I mean, that's, just once again, like, I just don't see, on de novo review, what, do we have a jury trial where there's testimony to it? Is that what, I mean, maybe that's what you want. It's confusing to me what you want, given that there is no real evidence except his saying that he, now he says he was terminated. The company says he wasn't. Like, what is it to look at? Okay. I think there's a couple layers to that question. I'm going to try and answer them all. In terms of a de novo review, I think all you've got to do is look at the record that conflicted plan administrator's decision and look at the credibility of what their evidence in the record, to your point, Judge Brandt. So. When we look at the administrative record. Sure. That the plan administrator relied on and that the district court considered, we see that he, he met with, he met with Nathan Goldman and Goldman told him he did not think the change in his reporting status constituted good reason for voluntarily departing employment with CXS. And at any rate, it was over a year ago that it happened. And that's the basis for his separation for employment. That's what the administrative record reflects, right? That's what the plan administrator found. And I would submit to you that what this is, and it's a little bit. Not only what the plan administrator found, that's what the administrative record reflects. I think the record reflects that he went into, to Goldman on his review. And he was asked about what his plans at the company were. He suggested that he might be ready to move on soon. And then he asked about availability of severance benefits, should he so choose to do so. And what the company did and the plan administrator did was turn that around and say, oh, thank you for your resignation. That's not what happened. But then he didn't, he didn't say, oh, no, sorry, I'm not resigning, right? Well, and I think if you look at it in context of what actually happened chronologically, there was a reason that he didn't immediately say what. He was very surprised when in the second meeting he came in and they said, thank you, you've effectively resigned. And let's look at that language really quickly, because they said you've effectively resigned, not you've resigned. The reason you use the word effectively is because it's not so. And so they took a position that colored what he said. And then if you look at that in the context of his repeated and very clear denials and him asking to get reemployed by the company, and they just said, nope, even though they'd like to argue that he was like this stellar employee and they completely compensated him well and all of that. It all smells very fishy. I think it does smell fishy. Is it true that his two arguments at the district court were, one, I resigned for good reason, so I should have severance. And two, I didn't really resign? His argument below in the court were exactly those two things. Isn't it hard to say that it was unreasonable for the administrator to conclude that he had resigned if one of his arguments was that he resigned for good reason? That was never before the plan administrator. That was before the district court. And he dropped that argument before the district court. I know. I'm not saying he's asking us to decide that. I'm just saying as one looks at the record, if one of his own arguments under the record was that he had resigned for good reason, doesn't that make it hard to say that it's completely unreasonable to conclude that he had resigned? I think his argument always for the plan administrator was that he did not resign. He did argue that he may have had good reason at some point, but he had just gotten the terms of the plan and was kind of looking at it like, I could have resigned before. That's what that was. Thank you. Mr. Rothfield. Great. Thank you, Your Honor. Charles Rothfield, Mayor Brown for CXT. We agree with my friend on the other side that this case is simple, but we think that leads to a different conclusion. First of all, the legal standard Judge Wilson has correct. I mean, the court can choose to engage in de novo review, but it can skip past that and move directly to an arbitrary, capricious, abusive discretion standard, which I think ultimately it doesn't matter which approach the court takes because both of them should lead to the same conclusion. I think the record is absolutely clear. The question here is whether or not Mr. Roddy voluntarily terminated his employment. And the record on that we think is compelling. It demonstrates that, in fact, that he did as the plan administrator found. Well, let me ask you this now. He says the plan administrator didn't consider his own emails. He considered Nathan, what is it, Nathan Goldman's notes, but not his emails. So why didn't he get a full and fair review if he's got emails that could be helpful to his argument? Well, I think that the nature of his full and fair review argument is not that the plan administrator didn't consider properly the material that was before. She didn't consider everything that he submitted. He should consider all of his arguments. She very carefully kind of went through the issues that were before and wrote kind of a reasoned explanation as to why she was rejecting his arguments. She even went beyond the administrative record as appropriate. For example, Mr. Roddy contended that he had a strained relationship with his superior, Mr. Goldman, and the plan administrator looked into that. She kind of investigated. She made inquires of people who were involved in that purported dispute, concluded that it did not amount to anything, and gave a reasoned explanation for that, too. The argument that Mr. Roddy is making now about his own emails is essentially that the administrator was obligated to engage in a freewheeling, kind of independent investigation to try to see if she could find something that would be supportive of his argument. He says that she should have looked through his calendar entries and his files and interrogated his colleagues. There is no such requirement. There is no obligation on the part of plan administrators to engage in what amounts to a He's entitled to a full and fair review, though, isn't he? He's entitled to a full and fair review. The question is whether that kind of freewheeling investigation by the administrator is necessary to do that. There is no support for the proposition that it is. There is no case that says that. And it would make plan administration impossible, because it would always be the possibility that the plan administrator could search out something else. If you look in particular at the kinds of things that Mr. Roddy is saying that she should have looked at, he hasn't identified any particular email, any particular type of document, any particular colleague of his who would support his claim that he had no plan to resign. And one would think that if something like that existed, he would have identified it. In fact, we sort of know from the record that Mr. Roddy's own words from his own deposition, he acknowledges that he was dissatisfied with his status at the company. He thought that his career had frozen. He saw no opportunity to get into the C-suite, as he put it. And so he was thinking about leaving. He actually had made plans, taken steps to creating his own company. And so we don't need to look at what third parties might have said about this. We have it from the horse's mouth that he was interested in leaving the company. And so I think he... If you've got conflicting evidence, so there's in this administrative record, he's got an affidavit that conflicts with Mr. Goldman's notes. And so if there's a conflict in the evidence, why isn't he entitled to consideration of the additional support for his argument? His emails just weren't considered at all, right? There was no sort of independent investigation to go about and look at his prior emails. But there was a conflict. You got different stories about what took place, the conversation that he had with Nathan Goldman. Their recollection of that meeting is in conflict. Is that right? That is correct. But I'll give you sort of two answers to that, Your Honor. One is that under the arbitrary and capricious standard, the question is not sort of who has the better of the argument. The question is whether the plant administrator's determination on the record was rational. Whether anybody... Well, that's true. But the Code of Federal Regulations, section 1133 sub 2, says that ERISA requires a full and fair review before benefits are denied. And an incomplete administrative record requires a remand. But we don't dispute that a full and fair review is necessary. We think that as the magistrate judge and the district court both found, on a careful review of what the plant administrator did, that there was such a full and fair review because the administrator, again, looked at everything that Mr. Rohde had submitted. He didn't identify any particular document, any particular statement, any particular email, any particular colleague of his, any particular calendar entry, which would have supported his argument as this very sort of generic conclusory one that maybe if you had looked at everything that I had in my files, that would have supported my argument because it wouldn't have said, there wouldn't have been any demonstration in things that I had said in these documents that I was planning to resign. I guess I would say to that, first of all, one wouldn't expect to find such statement. I think it's sort of an ordinary understanding that people who are planning to leave the company don't have in their company emails statements to that effect. And so it would not be the kind of thing that one would expect to find. I guess the additional point, again, is that we have from Mr. Rohde's own comments that he was planning he was dissatisfied with the situation at the company. He was sort of thinking about leaving. He was taking steps to create his own business. And so anything that would have thrown up any sort of absence of evidence from other emails that he was interested in leaving, I think would not really be supportive of his claim at this point. Doesn't the statute, when talking about full and fair review, I think say, here's an englazer, we said that the administrator must provide upon request all documents, records, and other information relevant to the claimant's claim for benefits for the review to qualify as full and fair review. And if a document is relevant, if it was relied upon or was submitted, considered, or generated in the course of making the benefit determination, isn't that what the statute is talking about on full and fair review? The initial benefit determination? That's exactly right. I think the question is, did the administrator consider everything that was before her? Did she kind of adequately address what was presented to her? And did she then present a reasoned explanation for what she had done? Now, upon review after the initial claims administration, I mean, we agree that a full and fair review has to be made, but again, on the record here, as the district court, as the magistrate judge both found, that happened. And if you sort of take a step back and look at the broader record, the administrative record that was before the plaintiff administrator, I think it leaves sort of no real doubt that Mr. Rohde was thinking about, had taken steps to voluntarily leave his position. And it's not just that there was a statement by Mr. Goldman. It was sort of a contemporaneously recorded statement of his exchange with Mr. Rohde. Mr. Rohde made similar comments to the plaintiff administrator herself, in which he said that he was leaving and wanted to leave as soon as that could be arranged. She also recorded that conversation contemporaneously when it was made. And it's not just a case of he said, she said here. I mean, there is objective evidence supportive of the account that's given by Mr. Goldman and Ms. Swerfleet, the plaintiff administrator, which include all this occurred just 10 days before the CSXT severance plan was due to expire. If the company officials were engaged in sort of a conspiracy to ease Mr. Rohde out the door, which is his argument, is his theory, it would have been irrational for them to do it when they did it. Because if they'd waited 10 days, the plan would have expired. There would have been no possibility that Mr. Rohde would qualify for benefits. So surely they would have waited 10 days to do that. And they did not. Conversely, that timing tells us why Mr. Rohde resigned when he did. Because he thought that he might qualify for the severance benefits. If he had waited to resign 10 more days, there would have been no possibility that he would qualify. And so I think that explains why he did what he did when he did it. In addition, as my colleague mentioned, at exactly the same time all this was going on, Mr. Goldman gave Mr. Rohde a favorable review that entitled him to a very substantial bonus, almost $400,000. Again, if his theory were correct, if there was some conspiracy to ease him out the door to save on his salary, it would have been irrational to give him a positive review and an enormous bonus as this is happening. In addition, it is undisputed that when Mr. Goldman and Ms. Swarfleet met with Mr. Rohde on February 15th, you know, after they'd had this conversation, and they said, we accept your resignation, as my colleague acknowledged, he did not say, I'm not resigning. Instead, he went and cleared out his office and made arrangements to tell his staff that he was leaving. He waited a full week to send a letter saying, I, in fact, I'm not resigning, you've got it wrong. And that is not the kind of action that somebody would take if they actually had a disagreement and weren't planning on leaving the job. Yeah, what's so weird about this to me is that these are, I mean, you make, you and the lawyer for the other side, make good sort of jury arguments about the credibility that we should give to these things and about, you know, why would it make sense for somebody to do this? It just seems very odd on an administrative record for us to sort of be evaluating the credibility of potential witnesses. Can you just comment on that? What are we supposed to do about that? No, I think that the Court is deciding this on the basis of the administrative record. And I think the question is, with the materials that were before the administrator, could she have rationally come to the conclusion that she did? So I think certainly if it's an arbitrary and capricious review, which we think is appropriate in the context of this case, this Court is not making credibility determinations. It's not kind of weighing the evidence. The question is whether a rational person could have come to this conclusion. And for the reasons that I've been outlining, certainly the answer to that is yes. I mean, there are two kind of credible people, the chief legal officer of this company and the executive vice president and plant administrator, who both documented their conversations with Mr. Rohde. There are these objective indicia, which I mentioned before, which I think also kind of strongly support that conclusion. And so there can be no real doubt that a rational decision-maker could have come to this decision. And I think, Judge Brashford, that's all that this Court has to decide. If you reach that conclusion, that's the end of the matter and the case is over. What are we supposed to do with, so I mean, in this, I don't know, I'm really struggling with how to evaluate the fact that the plant administrator was also kind of party to the resignation slash termination. On the one hand, that seems sort of weird because she's sort of evaluating her own actions. But on the other hand, you know, who would be better to know whether he quit versus whether he terminated than the person who was in the room who made that determination? So I guess, could you just address that a little bit about how we're, should we, I mean, how do we address the fact that this is the same person? I think your second point, I think, is correct. The fact is, administrators have to get information from somewhere. And, you know, they get it from documents that are submitted to them. They get it from evidence that's provided to them. Here, I mean, it's an unusual situation, but the administrator got it directly from the claimant. He went into her office and he said, I am leaving the company. And so there was no reason that she couldn't rely on that personal firsthand information to reach the conclusion. As you said, it actually kind of gave her a better sense of the reality here. There is no reason to believe that that exchange, you know, biased her against Mr. Rohde, that she had any kind of additional conflict. And there's no reason to think that her recollection is unreliable. And so I think, if anything, that gives an added support to her conclusion. It certainly doesn't give the Court a reason to say that she should be disqualified. So your argument, as I understand it, is, yeah, there's a conflict. There can be a conflict. But as long as the plant administrator does not act arbitrarily and capriciously, the decision should stand. That is correct. And again, we think that there was a full and fair review for the reasons that we've discussed. And the argument that she had a conflict, there's an argument that there was a structural conflict because the funds, if he were awarded them, would come out of the company's general treasury. This Court, the Supreme Court has said that kind of conflict in the modern business world is unremarkable. You know, in a case like this, in which CSXT is a very large company, $12 billion in annual revenue, the amount of money we're talking about here is literally immaterial. And so, and that can't be sufficient to undermine the validity of the decision. The other argument as to the conflict, again, is what we discussed with Judge Brasher, which is that the administrator had personal knowledge. And that, we think, if anything, gives added force to her decision. All right. So, if there are no further questions, Your Honor. Thank you, Mr. Raffel. Thank you so much. Ms. Bassett, you've reserved some time for rebuttal. Thank you. I want to address your question, Judge Brasher, that you just asked. Counsel, you know, shouldn't it be important, the personal information, the personal experience that the plan administrator had in the decision? And I think, under ordinary circumstances, that might be correct. Here, we have extraordinary circumstances. And, you know, a couple of the facts that I think the Court should consider, and this is on full and fair review, and it's also on conflict. And conflict, then, affects the arbitrary and capricious review standard, because the higher the conflict, the less deference you give. And here's a few- You have a case to support that proposition? I mean, this is not, it's not a court of law. Ms. Sorfleet's not a judge. She's a plan administrator. And the way I understand these things work is, the plan administrator can have a conflict. But as long as her decision is not arbitrary and capricious, it ought to be upheld. Is that a fair analysis? Sure. I think on the structural conflict issue, that is accurate. There is case law, I'm not recalling the name of it right now, that stands for the proposition that when you look at the conflict beyond structural and into, you know, personal bias and things like that of the plan administrator, the more conflict that you find there, the less deference you give that person's decision. And that's what we have here is a high level of conflict. First of all, the plan administrator here was charged with reviewing the chief legal officers- This is a structural, not a personal conflict, right? This is a personal conflict that I'm talking about. Okay. So she was charged with reviewing the chief legal officer's basic, you know, experience with respect to this. The legal department was heavily involved in this benefit decision. So the guy whose recollection that she was giving credence to was also advising her on what the decision should be. Second, counsel talked about- Isn't that something that could render it take us out of that review entirely? Frankly, I think you could do it either way. It could take us out of that review entirely. If you're talking about the lack of full and fair review, which I wasn't just addressing, but you could also say the credence towards her decision should be given way less deference because it was so infected with this conflict. One- Yes. Can I ask you, you just got a minute left, about the failure to consider his emails. Those emails aren't in this record or anything, are they? Was there any kind of proffer of what his emails would say? No, there's no- And he didn't have access to those emails, so really that would be asking him to prove a negative almost. One thing that I did want to raise to the court, and I think it's important for us to consider here, is that if the state of events the plan administrator has a say are true, which is this guy came in and he said, hey, I'm planning to leave the company, but I'd like to kind of figure out what my severance benefits are. If that amounts to a termination, then ERISA Section 510 would never exist. You're not allowed to be penalized for asking about your benefits, and that's essentially what has happened here. So the plan administrator- If someone said, I'm thinking about resigning, but I'd like to know about my severance payments, and then the next day the company said, so we understand that you've resigned. You, in that circumstance, I think would say, whoa, whoa, whoa, no, I didn't. But that, again, is not what happened here until a week later, right? That's right, and I think the disconnect there is that the termination was very surprising to him, and then they said, we need your credentials, we need you to pack up your office, we are going to escort you to come talk to your subordinates about this, and he was just in shock. And then he, when he was able to challenge it, he did, he asked for his job back, they said no. It's just all incredible. All right, thank you, counsel. The court will be in recess for 15 minutes. Thank you.